And a rejection as opposed to the 30 days that would have to be specified by the Supreme Court. This deviation from their rule, at the very least, because we don't have anything sanctifying this from the Supreme Court. You're saying that the default is always to go to the 30 day rejection that I'm saying that if there is a rejection period, it needs to be consistent with Supreme Court Rule 93. Do you think that we can enter in order and say to the Supreme Court, since you weren't very clear to the public and to the legal community here, that the seven day rule is void? Can we do that? No, Your Honor, but respectfully that's a different question. How do we get there? How do we get to your point? When the Supreme Court, believe me, has agreed with the ADR Committee, I was a member of the ADR Committee for 10 or 20 years. I don't remember how long, but it seemed like forever. I was there on the first mandatory arbitration. I went through the process. We wrote it out. They changed it. They approved it. They approved everything we ever did. Respectfully, Your Honor, that's an entirely different situation. The Court of Appeals in the Circuit Court exists by grant of authority from the Supreme Court. There are Supreme Court orders creating those courts. The legislature doesn't. The legislature has its own separate and complete... No, but what you want us to do is to say to the Supreme Court, you can't do things like you do. I'm saying that the appellate court, Your Honors, should find that there is no specific grant for the local rule to supersede the legislature, which is what this court has required in every case regarding a conflict between local rules and the statutes. So it's slightly different from Your Honor's situation in that the appellate court does answer to the Supreme Court. The legislature does not. The legislature made a specific action to say that any time before trial, there is a mandatory non-discretionary right to dismiss your case. The only exception that the legislature enacted was that if there was a pending dispositive motion before the motion to dismiss is filed. There was no such motion in this case. Therefore, there is a mandatory statutory right that plaintiff held to have his case dismissed. Unless there is something greater, that prevents it. But the only thing that we have in this case is a local rule. And local rules, per this case in People v. E2, cannot supersede statutory rights. In that case, it was the Speedy Trial Act. I agree with you with one exception, when the Supreme Court approved it. And that's what they did. But there's no case law supporting that argument, Your Honor. No, no, there's no case law because nobody ever brought it up because people who investigated find out that the Supreme Court approved it, and they don't go any further. Well, the logical end result of that, then, Your Honor, is that every Supreme Court order, no matter how vague, is going to be interpreted by the circuit court, perhaps the appellate court, to do essentially whatever they feel the Supreme Court intended. And there's no field of law that provides for reading the Supreme Court tea leaves. Everything is explicit. When we're interpreting statutes, we look at the plain language of the statute. And only when the language of the statute is ambiguous do we start interpreting the intent behind it. That canon of interpretation doesn't even have any precedence with Supreme Court rules because Supreme Court rules are explicit. Supreme Court rules specify what the powers of the Supreme Court, the appellate court, the circuit court are and what the rules that each of those courts can enact and how they interact with statutes that may or may not conflict with them. Counsel, the case law says that if you lose your right, if you don't timely reject an arbitration, and then you try to voluntarily dismiss the case to get around that rejection, because you're going to be stuck with that and you don't want it. So you say, hey, I'm going to voluntarily dismiss. Yes, Your Honor. If we're talking about the Supreme Court Rule 93, the courts have said you can't do that, right? Yes, Your Honor. Because you'd be making a mockery of the mandatory arbitration program. And so the difference between our case and those cases, which I didn't read you to be criticized in those cases. No, absolutely. They seem to be pretty solid. The only difference is those cases are basically the same thing as Supreme Court Rule 93. Let me even drill down a bit further. At least one of those two cases, I think Arnett might have been, one of those two cases, there's two cases that said you cannot get around your blowing the time to reject by taking a voluntary, right? Yes, Your Honor. And at least one of those cases was a Cook County local rule. Yes, Your Honor. Not a Supreme Court rule. Yes. Now that local rule from the first set of Cook County arbitration programs tracked the language of Supreme Court Rule 93 to the letter. Yes. But it still was a local rule, right? Yes. It was. It was a local rule that was up against a statute. And the court said, I grant you they didn't say this explicitly, but they held that that rule prevailed over a statute. It wasn't a Supreme Court rule. It was a local rule. So the only difference between that case and our case is that in that case, it was a local rule that happened to mimic exactly Supreme Court Rule 93, whereas in this case it clearly doesn't, but the Supreme Court said this is okay with us. And you think that's a meaningful enough distinction? I think that's an incredibly important distinction, Your Honor. And if I may go back to those cases that Your Honor mentioned, all of the analysis doesn't talk about local rule 18. They mention that this was the rule that was used by the judge, but when analyzing the actual content and the applicability, they speak about Supreme Court Rule 93. Right. There's no mention of the local rules, because the local rules are entirely a character of the Supreme Court rules, pasted verbatim from the Supreme Court rules with the Supreme Court rule in their title. And that is an incredibly important distinction, because, as I mentioned earlier, the Rule 86C, the requirement that that be required in order for this to be a Supreme Court program. So by your reasoning, any deviation from the Supreme Court rules is a violation of Supreme Court Rule 86C. So no local rule on mandatory arbitration in any circuit in this state that strays in any way is valid? No, Your Honor. So you really are saying that. You're saying it wouldn't be valid as against the statute. Yes, Your Honor. But you're also really saying it wouldn't be valid, period. It would be violating Supreme Court Rule 86C, which says the rules must be consistent with the Supreme Court rules. So the Supreme Court is going to approve these rules, even if they deviate, and you're still going to come in and say it doesn't matter that you approved it, it violates 86C because it's not the same as the Supreme Court rules. It's not the cookie-cutter language from the Supreme Court. Respectfully, Your Honor, I'm not arguing they cannot have a mandatory arbitration program. No, but those portions of it would be invalid. Not necessarily, Your Honor. You could have a mandatory arbitration program which follows the normal rules for a local rule, and they could have any terms that the circuit court would like, such as seven days to reject an arbitration award. There's nothing invalid about that. And, in fact, I strongly suspect that's why the Supreme Court entered a particular order to this, saying that you can do it, as Your Honor said, to create a variance with it. But the difference is that the Supreme Court is not lending its authority to the circuit court. It's merely saying you can have a program. The authority over the statute comes entirely from the Supreme Court rule. You can have separate local rules for arbitration, but they don't have the same impact, just like any other local rule. Going back to Mr. Krug. Yes, Your Honor. I know you wanted to save some time for rebuttal, so why don't you wrap up this portion of it? Thank you, Your Honor. Because the circuit court improperly relied on Rule 86, it does not apply in this case. Therefore, it's a local rule in conflict with the statute, and, therefore, the denial of plaintiff's motion was in error and should be reversed. Thank you. Thank you, Mr. Kurtz. Ms. Schumacher. Good morning. May it please the Court, I'm Florence Schumacher. I'm here representing the Appalachia State Farm Mutual Automobile Insurance Company. Appellant is asking this Court to reverse a Supreme Court action, which is something this Court cannot and should not do. By way of background, as I'm sure the Court is aware, in September of 2014, the Illinois Supreme Court approved the Circuit Court of Cook County's petition to launch a pilot program for commercial mandatory arbitration. Two months later, the Circuit Court enacted Rule 25, which codifies the program. After the program operated under Rule 25 for two years, the Supreme Court entered an order in September of 2016 approving the program on a permanent basis. But there was nothing specifically in that order which stated that the rules which deviated from the Supreme Court rules for arbitration were A-OK with them. That's correct, Your Honor. There's no reference to Rule 25 at all. But the thing the Court has to be aware of is that Rule 25 cannot be separated from the commercial mandatory arbitration program that was approved. The entire program is codified in Rule 25, and Rule 25 governs the whole program. Every step of the mediation process from referral to rejection is thoroughly covered under Rule 25. But how do we know that the Supreme Court – let me say that different. Well, no, I'll leave it that way. How do we know that the Supreme Court approved the deviations from the Supreme Court rules? You do agree there are deviations in the local – There are deviations, but in the – How do we know that the Supreme Court said that was OK? They said the program was OK. Go ahead and do a program. They didn't say anything about – They said the program is OK, but how would the program – there's no program that exists separately from the rules. I mean, Rule – this pilot program – Was that true in 2014 also? There were no – I don't know what the – when the circuit court submitted the petition. I don't know if the rules were already attached to the petition in 2014. We don't know. The rules were enacted two months later. Have you tried to find that out? I have tried. There is no legislative history that I was able to find, and I looked everywhere. The pilot program went on for two years. And within the first two months, Rule 25 is clearly in place because the circuit court approved it in November of 2014. Two years went by. After two years, the Supreme Court entered the order saying we approved the program. There is no reason to believe that the Supreme Court hadn't taken, during that time, the 10 or 15 minutes that it would take to read Rule 25, all the provisions of Rule 25. And I think we can assume that if the Supreme Court was unhappy or uncomfortable with any of those provisions, it would not have approved the program. But one of the problems I think everybody is struggling with is what do we do with there's no reason to believe the Supreme Court didn't read it, or we have to assume the Supreme Court read it? There is nothing that we can judicially notice. There's nothing – certainly nothing in the record on appeal, but even something – is there anything we can even judicially notice that would give us any formal indication, whatever we might know, that that is exactly what happened, that the Supreme Court reviewed the rules? Are you aware of anything? I am not aware of anything. So this is a presumption that this Court is going to have to make. I think it's a presumption that's easy to make for several reasons. The Supreme Court, as Justice Gordon pointed out, has been actively and intimately involved with the formation of arbitration programs since the mid-1980s. There has been a standing committee of the Judicial Conference that strictly addresses ADR, that reports to the Supreme Court every year. This has been going on for 20 years. Again, there was a two-year period before the Supreme Court approved the pilot program. And I don't think there's anything we can conclude other than the Supreme Court was aware of what it was approving. So it seems really, really, really, really likely that they looked at these rules.  But we don't know that they did. We don't have documentation. That is true. We're taking a little leap of faith here. But let's talk about that. Yes. So what do we do with that? Who's got the presumption in their favor in this case? It's not like an evidentiary presumption. We are asking the Court to make an assumption because there's no other reasonable assumption that can be made. What is the program that the Supreme Court was approving if it's not the program that's codified in Rule 25? There's no separate program. So I don't think there's any way. Are there any other programs that the Supreme Court has approved that they don't specifically sanction the deviation from the Supreme Court rules? Is there anything else we can point to that said, yeah, they did it in this and this and this program? Different programs in different circuits? Yeah. I know there are differences. I'm not fielding on every circuit's programs. I know the Supreme Court has said from the beginning that it's very careful to design programs in such a way that they'll work in a particular circuit. So, for example, if it's a small circuit and there aren't a lot of arbitrators available, they're going to narrow the class of cases or they're going to approve the narrowing of the class of cases that go to arbitration simply because they don't want to overload the system. I mean, Winnebago County was the first county to have an arbitration in 1987. And Winnebago County clearly has different interests than Cook County does, especially the commercial calendar. So I think that the Supreme Court has been very careful and very active in approving these things. There is an issue in that when these committees do their work, they do reports every year, but there isn't a lot of detail in these reports, at least that I could find, that's providing some kind of legislative history for the court to follow. I was not even able to find a copy of the petition that was submitted seeking approval of the pilot program. I went all over the city of Chicago in person trying to find something. They don't have anything. So, obviously, this is a less-than-ideal circumstance. But, again, I think to ask the court to find otherwise would be to ask this court to assume that the Supreme Court did this without any caution. And I just don't think it's appropriate for this court to draw that conclusion. Again, the Supreme Court certainly has the authority to vary from its own rules. And, again, Rule 86C, on its face, is simply a limitation on the circuit courts. So Rule 86C says a circuit court can adopt rules for the conduct of arbitration proceedings which are consistent with these rules, but on its face this does not serve as a limitation on the Supreme Court. Counsel, what do you make of your opponent's argument? As I understand the argument today, he's not suggesting that Cook County or any other circuit could not stray, could not deviate, and that the Supreme Court couldn't approve that deviation, but that there's just a fundamental difference in this case because this case we have a rule, a seven-day rule, conflicting with the right to voluntarily dismiss. If it were the Supreme Court Rule 93, it would trump the voluntary dismissal statute. That's what the case law says, and I haven't heard anybody say that those cases are wrong. But he is saying that this is not Supreme Court Rule 93. It might be okay to deviate, but it didn't elevate it to the level that it could trump a state law on voluntary dismissal. Well, the problem with accepting that argument is then any case, it basically invalidates the entire arbitration program because if any time someone is unhappy with the result, they can simply attack the validity of the arbitration program. You no longer have an arbitration program. I mean, in Cook County, commercial mandatory arbitration doesn't... Well, that's not really what he's saying. He's saying it could not trump 21009. It couldn't trump the statute. He's not saying it's invalid generally. That's not what I understand him saying today. That's kind of how I read the brief, to be honest. But what I'm understanding him to say today is not just, oh, they're all invalid because they deviate from the Supreme Court Rules. He's saying, okay, even if it's okay to deviate, it can't rise to the level of the Supreme Court Rules such that it can trump a statute. Well, yeah, a local rule certainly can't trump a statute. And if this were a local rule that had not been specifically approved and acted upon by the Supreme Court, then I would agree with counsel's position. For example, if there was some arbitration program where they had enacted local rules, they had not received final approval from the Supreme Court, and then there was an issue with something that contradicted with the statute, I think then we would have a different outcome. Again, I think the key in this case is the 2016 approval of the program. Then I think there's no reason to recognize a difference between Rule 25 and a Supreme Court rule because, again, it was specifically approved by the Supreme Court. The Supreme Court is allowed to deviate from its own rules. The Supreme Court has sole jurisdiction over matters of procedure and administration of the courts. And I think at that point, regardless of what the statute said, this is the Supreme Court's prerogative to enact arbitration programs, to approve arbitration programs. And I certainly think that once the Supreme Court has approved it, then it's a matter of the Supreme Court's administrative and procedural authority under the Constitution, and that's the end of the question. Then to the extent it conflicts with the statute on an issue of procedure, then the Supreme Court's action has to prevail. The Supreme Court has a lot of concern with the overcrowding of the courts. Arbitration is there to lighten the load on litigants, on the court. It's an important function of the Supreme Court, and I think before this Court would choose to disregard this 2016 approval and overrule the program, I think that would create a lot of difficulty, primarily because at that point, I don't think there would be a commercial mandatory arbitration program in place anymore, because every commercial mandatory arbitration has one person, has one arbitrator. Rule, I don't remember the specific rule, but Rule 86 to 93 requires three. So from this point on, there would no longer be commercial mandatory arbitrations, and every prior arbitration, I would say, would be subject to being overturned. I think we're all in agreement that once this Court accepts that the Supreme Court 2016 order is the equivalent of a Supreme Court rule, then it trumps the right to voluntary non-suit under the other cases. I don't really have much more to say. I think the 2016 order answers this Court's question, and then we would just ask that this Court approve the circuit court's order at dismissing this case and entering judgment on the arbitration award. Thank you, Ms. Schumacher. Thank you. Mr. Kurtz. Thank you, Your Honor. Pardon me? Thank you, Your Honor. To briefly respond to some of those points, I think, again, to use a hypothetical, because there's a lack of concrete law on this, would be quite instructive. Appellee's counsel says that is specifically approved by the Supreme Court. What happens then if tomorrow the circuit court decides, well, we don't like the way that the mandatory arbitration, commercial calendar arbitration is set up? What if we want to amend our local rules? Then they would have to petition the Supreme Court to amend it. There's nothing on the face of the order that the Supreme Court provided saying that you need to do X, Y, and Z. There's nothing on the face of the order saying you must follow these things or you need to create a specific program. So because they didn't delineate exactly what needs to be changed, you're saying that the entire record is or the entire rule is thrown out the window? No, Your Honor. I'm saying that if Appellee's argument holds, then the circuit court could modify Local Rule 25. They have the ability to modify their local rules. There's no question about that. The issue is that she's trying to bootstrap Supreme Court authority onto a rule that the Supreme Court never so much as referenced the contents of. So that leads to a real problem should the circuit court decide to do something different because theoretically that is under the auspices of that Supreme Court order. But when the Supreme Court rules say that you have to get approval from the Supreme Court for a mandatory arbitration program, don't you think a reasonable construction of that would be and if once you get that approval and then you change it, you've got to get approval for that change too? Not necessarily, Your Honor, because it's unclear what the scope of the order that the Supreme Court entered in this particular case is. It's unclear whether it's as the circuit court said, this is really a creature of Rule 86. It's unclear, it's what Appellee's counsel said, that this is really just a broad exercise of the Supreme Court's authority. There's no delineation there. And Appellee's asking this court to just assume certain things based on an absence of evidence. Well, in fact, this court doesn't need to do that. This court can follow its own case law, the Supreme Court's case law. It can look at the plain language of the Supreme Court rules in question, 2186 through 94, compare them to the local rules, ones that do have the strength of the Supreme Court rule because they adopt it, Local Rule 18, versus one that doesn't, Local Rule 25. There's no need to presume. There's no need to guess. There's no need to assume anything because everything is there. There's a statute. It allows for something. Absent some affirmative action by the Supreme Court to say you cannot do that, as there is in Rule 93, then the local rule cannot operate in the fashion that the circuit court stated that it did. Now, to discuss Appellee's other point regarding the uselessness, more or less, of the commercial calendar arbitration if it can't supersede the statute, that goes for essentially every local rule. Local rules have existed, and they have managed particular programs, deviation programs in criminal cases, small claims programs in municipal departments. Those have done those without specific Supreme Court rules giving them force over the statute, and those programs do fine. The only issue here is that when a statutory right is invoked, whether the local rule can trump it. That's not the foundation of the arbitration program. The foundation is to bring people in, get pretrial and pre-arbitration memorandums, and try to hash things out. Yes, there's an enforcement mechanism, but that enforcement mechanism isn't the entire program. And more to the point, the enforcement mechanism is only relevant when a litigant makes a mistake. I fully admit that the litigant made a mistake in this case, but to say that that litigant should lose his rights despite the complete silence of the Supreme Court on the issue in the face of a mandatory statute enacted by the legislature, that cannot stand. The circuit court's argument regarding Rule 86 doesn't address any of these issues. Appleby's argument regarding the Supreme Court orders doesn't address any of these issues because it's clear. It's on the face of the rules. Therefore, this Court should reverse the circuit court. Thank you, Mr. Hart. Thank you, Your Honor. Okay. The Court will take this matter under advisement and issue an order as soon as possible. Thank you both.  17-2349 in the interest of KM. Good morning, all. Can the attorneys who are on KM please approach the podium and identify yourselves for the record? Ms. Cuso, you were about to have a baby the last time you were here, didn't you? That's right. Assistant State's Attorney Ashley Cuso on behalf of the people of the State of Illinois. Tom McHenry on behalf of Keontae. Good morning. All right. Mr. McHenry, did you want to reserve time for rebuttal? Two minutes.  You can proceed, Mr. McHenry. May it please the Court. Keontae challenges solely the terms and conditions of his probation, which on their face would bar him from having any contact, whether in person or via social media with gangs. It also includes guns and drugs. The probation order tracks the statute. Is that correct? With so far as it's saying that you can't have contact with certain people, correct? So the trial court tracked the letter of the statute, right? So how can we say she erred if she tracked the letter of the statute? Well, I mean, the legislature doesn't determine, you know, whether or not the judicial question of whether something is permissible or not ultimately rules the day. So, for example, like in Omar F., which is the same juvenile judge, it's virtually the same order. It would also track the statute insofar as it said you could have no contact. But there's already been some dissent with Omar F.'s position. Is that correct? With respect to, there was one other published decision, R.H., where the first district also, they were dealing solely with the social media aspect of the order. They did not deal with in-person contact, which, as R.H. talks about, that was one of the main focuses in Omar F. So we don't need to pick a side on this one? Is that what you're saying? No, I don't believe so. I mean, with respect to if you want to go to specifically the social media issue, then yes. You know, there is a difference in R.H. versus Omar F. So, but with respect to other, you know, which is really one of the main concerns, and that's what Omar F. stresses is that, you know, listen, and also, you know, this is one reason why we can't just look solely at the language of the statute. These are playing out in communities that have varying amounts of gang presence. So in both Omar F. and also in this case, it's spread of record in the social investigation that Chianti lives in an area that has a high gang presence. There are a lot of guns there and a lot of drugs there. So is there a way that the trial court could have crafted the probation order with being in compliance with the statute and not being overly vague? Yes, Your Honor. I mean, one of the important things in J.W., the Illinois Supreme Court case from 2003, that was dealing with terms of, that was dealing with, you know, what sort of restrictions you can place on somebody as far as, like, geographical location. There they said, you know, one of the key components is that, you know, the general would need to have some sort of mechanism built in, some sort of understanding that I can pursue legitimate exemption. So, for example, you could put in the probation order. But that was in the statute in Ray J.W. It is. But, I mean, critically, J.W. also says that the statute mirrored the constitutional demands. So those were two separate things. It wasn't simply because it was in the statute. So what could be done is that Judge Rivers could say, listen, I recognize you live in an area with a lot of gangs, with all these problems. You need to go to school. Hopefully you're going to get a job. All these other things you're supposed to be doing, I don't want to, I certainly don't want to prevent you from doing any of that. So if there's any question, you think you have a valid reason, you know, to play basketball in a night league that's supposed to get kids off the street, if you want to do that and there are other gang members in it, talk to your probation officer, you get a green light there, you're fine. If you don't, then come to the court, you know, and then I'll take the final view on it. That would be a simple way of adding at least some mechanism so that we know that he's not technically constantly a violation of his probation, which leads to arbitrary enforcement. So is there any reason, anything that would have prevented this individual and his lawyer from going back before Judge Rivers? Instead of, you know, filing an appeal with the appellate court, couldn't you just go back to the judge? I mean, I would think that, I guess I have no way of knowing, but I think she might have been amenable to that, right? I mean, if someone said, Judge, as we read this, he can't work at McDonald's next to someone who's in a gang. He can't say hello to a gang member in the hallway of a school. If his biology lab partner is a gang member, he's in violation. And the judge, there's at least a decent chance the judge would say, oh, well that's not what I intended, let me clarify. Is there any reason why that didn't happen here? I'm not sure if this is why it didn't happen, but, you know, Chianti is a 17-year-old. He's in a special education program. You know, what some people might do in his situation might be different than what Chianti might do. Well, I don't think Chianti is in charge of exactly how this case proceeded legally. Chianti wasn't the one saying, let's not go back to the trial court and ask for an amendment on a probation order. Chianti wasn't the one saying, file a notice of appeal and contest the constitutionality of this statute. That's not his decision. Those are lawyers' decisions. So why wouldn't a lawyer say, let's go to the least restrictive manner we can and just ask the judge to modify this order? As to why they didn't, I don't know. They didn't. And just like they didn't in OMRF, and so we're dealing with the now and what we can do now, and, you know, it's really the same judge that's doing these orders in several cases. It would be good if it could be dealt with at that level. So, you know, just like OMRF, when it came down, that was hopefully instructive to that judge. But, you know, going forward, to put the onus on everybody else so that we can now craft these orders as broad as possible so that virtually everybody in those communities are going to be technically violating the terms of their probation. So what would the order have had to say with regard to this that would be in compliance with what you're asking for? Several things. The first thing, you know, as I mentioned, would be having some be clear to the respondents that, first, there are exceptions to this. We recognize that. Your first goal would be go to your probation officer. If you want to engage in something you know, whether it's through school, work, or whatever, extracurricular activities, you're going to have some contact with people who are gang members. Go to your probation officer. That would be the biggest part. I think in JW, if JW, if that had been included, I think it likely would have avoided sort of the most of what was wrong with that. Here, I would say one additional thing that would be helpful would be, you know, in Omar F., they stress that one of the problems is this sort of unintentional or unknowing and otherwise innocuous behavior that that would, you know, lead to a violation of probation. Even if you could add, right now, the probation order doesn't have anything about knowing, you know, or intentional. So, I mean, technically, you're riding a bus with somebody, and, you know, they start talking to you, and they happen to be a gang member. You don't know it. You're technically violating the probation. So, they can even, you know, change some of the language to make it more clear that our intent here is obviously to make sure that, you know, if you're knowingly promoting sort of gang activity or being involved in gang activity, that's an issue, you know. And you're saying the record here supports the notion that this juvenile had, he lived in an area where there were a lot of gangs? The social investigations present record that he lives in the Roseland community on the south side, and it says it's, you know, I can't do the exact quote, but basically this is a high gang presence area. There is a high degree of drugs and gangs. So, it's spread of record that this area, he's going to have contact, whether incidentally or otherwise, with gang members just to do the things he's required to do. Well, it says no contact with gangs. It doesn't say with gang members. What you suggest is that when somebody who is under this type of order, when he wants to play basketball, he should go to his probation officer and discuss it with his probation officer. Do you understand that when they play basketball, they go to a schoolyard or a playground, and those are pickup games. They don't even know who's going to be there. So, how could you go to your probation officer and find out whether that's all right to play in the game because you saw a gang member who was also playing? Well, there are different levels. I mean, there's an organization, Strides for Peace, that focuses on at-risk areas in Chicago. One of their programs is the nighttime basketball league. That is more organized. It's not just going to the playground. Most of the games are from the playground or from the schoolyard. Those organized programs are totally different. But they nonetheless exist in those communities, and if he wants to participate, he was a part of the AAU organized program. He can't participate in the schoolyard basketball pickup games because a gang member is going to play. That's being revolved with gangs because you're playing basketball and somebody is in a gang. If one of his former gang members calls him and says, Hey, let's go play basketball out here, they're not talking necessarily about games or anything, but he goes and plays basketball, I would understand him to be in violation of the terms of the probation. I don't think that's reasonable. But technically, does he know he's a gang member? Yes. Is he going to play basketball? Yes. Are they talking to each other before or after? Sure. That would be in violation of the – I don't see how one could say that because it specifically says no contact with games, you could therefore have contact with gang members. Was that the intention of this statute then, that you're not to have any contact with anybody because he's a member of the gang? That you don't be involved in gang activity? Isn't that what this is all about? I think that's a reasonable interpretation of it. However, it says in the statute no contact and it also uses activity. With games, it says games. It doesn't say anything about basketball or playing checkers or anything else. It's talking about games. We all know what that means. Well, one of the sentencing orders has contact. What should it say as far as you're concerned? What should it say? Well, as I mentioned, one would be first it should have a provision for exception so he knows what to do, how to get around it to get verification so he can't do it. Are there exceptions in the statute? I mean, is this statute constitutional? This court, neither this – this court in OMRF did not address whether or not the statute itself was – Is there a way to modify this probation order without striking down this statute? Absolutely. Yeah, just like in OMRF. They did not strike down the statute in OMRF. They're saying – They just said it was vague and remanded for a modification of the probation order. Give him some indication of exactly what type of behavior you're – that he'd be in violation for and also some means of finding exceptions for valid uses of it. But also, you know, the order itself, one of the orders has no gang contact or activity. So I don't know that at least as the court order is written, there is a distinction made between contact and activity, and they're saying you can't do either of them. So I don't know if, you know, if the view would be that contact is only supposed to be – So the view would be a gang activity according to you? No. I think that if there's a member who is in the program, so if you're at Strides for Peace and they're marketing themselves to at-risk kids and some of those kids are in gangs, right, and they're playing and they're on a team together, they're having contact with each other. That's separate from the probation order of having activity. I don't think that's reasonable to penalize somebody for doing that, but that's – I didn't write the order. For those reasons, if there are no further questions, we would ask this court to remand with instructions to narrowly tailor the terms of Cante's probation. Thank you. Thank you, Mr. McKinley. Ms. Cusa. Good morning again. I'm Assistant State's Attorney Ashley Cusa on behalf of the people. There is nothing wrong with the probation order in this case that prohibits a 16-year-old self-admitted every-body killer gang member from having contact with gangs, guns, and drugs. Okay. What about his – just hypothetically, as we know, many times gang members are all in the same gang in a family, the dads, the uncles, the cousins. He has a family reunion, and all of his relatives are there. Wouldn't that violate this probation order? It would, and you're talking in terms of a hypothetical, and when we're talking in terms of a hypothetical, we can't use the same as-applied analysis that the minor has raised in this present case. So let me explain why. Counsel here has used the same flawed logic that we see in OMRF to confuse the distinct and separate analyses of facial and as-applied constitutional challenges. And this argument, just like the one that we see in OMRF, lies in the face of well-settled principles of constitutional jurisprudence, and it ignores the simple and straightforward solution to this problem, because here's the problem with counsel's analysis. He's arguing that the minor's probation conditions were unconstitutional as applied to this minor's own circumstances, but we can't establish what this minor's circumstances actually were. And because there's absolutely... Would you agree that the record shows that he lives in a gang-infested area? Yes. So that's something we know. It's something we know, and perhaps just because... So if he's in a gang-infested area, can we take from that that he goes to school? He's been ordered to go to school, right? Correct. That was part of the order. So he must go to school, and he sits down in his assigned seat, and sitting right next to him, his biology lab partner is a gang member. Is he in violation of this order? No, he's not. What if he says hello to him? No. Or pass the... It says no contact. Isn't that contact? No, it's not. What we have to look at is the intent of the legislature in crafting this statute. No, no, no, no, no, no, no. This order says no contact. Forget the statute. The order says no contact. What is he supposed to think that that means? He knows exactly what that means. And contact connotes the ordinary and popularly understood meaning of contact is to have a relationship, to have a connection. Well, so his biology lab partner, he has a relationship with him. He's a gang member. How is that not contact in violation of this probation order? Because even in the library or even in the classroom, it's the minor's connections and relationship with gang members that are problematic. So if he is, in fact, having, has a lab partner, has to have a relationship with this lab partner, and that lab partner is a deeply rooted member of a very dangerous gang in Chicago, this juvenile court is well within its authority to order this minor who's on probation not to have contact with that individual. But the point I was getting to before is these are all in the hypothetical. And we can't expect this court to carefully craft an order or call about special exceptions for circumstances just like this. No, but we can expect the trial court to do so. We can expect the trial court to craft orders where people are on notice on what would cause a violation of probation. Do you believe that this order puts the minor on adequate notice of what he will be in violation for? Absolutely. Absolutely. And the only way that the juvenile court can craft an order to make these special exceptions is if this information is brought to the attention of the juvenile court. So if this minor... Well, the juvenile court knew that he lived in a gang-infested area. Absolutely. I assume that's why she said don't be around gangs. Don't have contact with gangs. Absolutely. And just because the order of probation may be difficult for this minor to abide by doesn't mean that it's invalid because it's still in this minor's best interest not to have contact with members of a criminal enterprise that caused him to be in this juvenile system in the first place. And the court has narrowly crafted this order as best it could with the evidence that was presented at the sentencing. Couldn't it have been narrower to put in exceptions? And they don't have to be listed. It could just say, you know, if you find yourself... I'm ordering you to go to school. If you find yourself in a situation when you're doing exactly what I ordered you to do, which is go to school, that requires you to be in contact with a gang member, tell your probation officer, or come to me and we'll give you a waiver. And that's what they talked about in the NRAJW case. I'm not saying you have to foresee every circumstance, but you could give at least some safety valve. I mean, doesn't this individual walk around on a daily basis not wanting to go to juvenile detention, wanting to comply with his parole, finding it extremely difficult to comply with this order? No. I think the order is very clear for this minor, and he understands the exact kind of contact and the individuals that he's not supposed to be having contact with. He understands the exact kind of contact? Yes. Which is what? Which is to actually have a relationship with. To have a relationship with? So if his dad is a member of this same gang, he can't have a relationship with him. Well, again, there might be some very extreme circumstances where very close members of this minor's family are so deeply rooted in the gang that that wouldn't be appropriate for the minor. So where does it say they have to be deeply rooted? I didn't see that in the order. The order said no contact with gangs. Period. Yes. Absolutely. And if the minor truly has... So where does it say they have to have a deep and abiding love and a relationship and they have to have an ongoing contact? It doesn't say any of that. Did the judge give any of those instructions? If you have family members who are gang members, that doesn't count. If you have basketball team members who are gang members, that doesn't count. Did she give him any parameters of exactly what would a violation be? She was very clear in that he was not to have contact with gang members. And I have to emphasize, and you did point this out before Justice Burke, that the onus here is always on the movement to establish unconstitutionality. And this minor... Wasn't there a way to modify this order without getting to the constitutionality of the statute? No. Or is that the only way that we could have this probation order modified is to rule that the entire statute is unconstitutional? This entire statute is certainly not unconstitutional, and there is no way for us on appeal without a fully developed record and without really knowing what this minor's circumstances are or the situations in which he would need to have some kind of legitimate contact with gang members. There's no way for us to carefully craft a sentencing order that will help this minor reach the goals of his probation, his rehabilitation in this case. And if this minor truly had the need for legitimate gang contact, he had the opportunity at his sentencing hearing to inform the juvenile court, and he was represented by counsel at that time. And under Section 5-710, the minor is allowed to ask the juvenile court to modify his sentence at any time. So he could walk in there today and ask the juvenile court, raise these issues with the juvenile court. And because he's failed to do this, the juvenile court obviously was never informed of any reason that he needed to have gang contact and never had the opportunity to craft a good order. So in other words, the minor here, what he's done is he's bypassed the proper procedure in this case, and he's now asking this court to strike the conditions of his probation based on these imaginary circumstances that, if true, might make the conditions of his probation unconstitutional. But this is not a valid or a proper constitutional analysis because without an evidentiary record, his as-applied challenge is premature. So... Why do you keep referring to an as-applied challenge? This isn't a statutory... This isn't a...  He's challenging the order. And he's saying the order as applied in my specific circumstance is unconstitutional to me. And what he's done, it's really confusing. It's hard when you read the briefs to understand because he's framed his as-applied arguments in a manner that sounds a lot like an over-breath challenge to the facial validity of a statute. And that's an entirely separate analysis. Because when we look at a facial challenge, we look at the statute in the context of all of its applications, and that includes hypotheticals as well. And a facial challenge fails if there are valid applications of the statute. And as this Court... But the statute's not being challenged here, right? He's not challenging it. I'm sorry. You're just distinguishing between the two? It's the order. My apologies. Usually when we're talking in the terms of facial because it's a little bit confusing what we're doing. But if we're talking in terms of facial, it's usually with respect to the statute. But as Justice Booth pointed out, this order did track the letter of the law as far as the statute. But this order here, as imposed, has numerous valid applications because there's simply no more compelling reason, interest rather, than to keep a child who's been adjudicated delinquent away from a criminal enterprise that's known to exploit teenagers. We see the same sort of flawed or confusing analysis with respect to his vagueness argument. And to prevail on an as-applied challenge to a vagueness argument, the movement has to demonstrate that the restriction was vague as applied to the conduct for which he was prosecuted. There was no violation of probation here. All of this is in the hypothetical, and that's why these as-applied constitutional challenges were not raised properly. So, again, if we look at vagueness from a facial challenge, which was not raised by this minor, but sounds in a facial challenge due to the nature of the hypotheticals, we have to look at two things. We have to look at whether a person of ordinary intelligence had a fair warning as to the prohibited conduct. And when we think about that, we have to consider whether the words that were used in the order had what are their ordinary and popularly understood meanings. And we also have to give consideration to the legislative objective and the evil that this statute was designed to remedy. Counsel, I agree. It doesn't seem like the problem with this order, if there is a problem, is that it's vague. I don't think contact is vague, but I think contact includes everything. And every time you talk about contact, you start modifying it with words like relationships and deeply rooted, which is not what the order says. Contact is, I touch the justice on the arm, I've contacted her. I say hello, I've contacted her. I brush up shoulders with her passing her, I've contacted her. I call her on the phone. I e-mail her. There are all sorts of things that contact can mean, right? Aren't all of those things covered by this order? You're absolutely right. There are actually two dictionary definitions of the term contact, and one involves the contact that I was talking to you about, associating, connecting, having a relationship, getting in communication with. Is that what this means? Which one does it mean? This is exactly what this means. It doesn't mean the physical contact. Surely here the legislature was not concerned with the minor physically touching another gang member. So it was a communicative thing? Absolutely. Because these relationships that the minor forms with other gang members, this is what encourages the minor to keep engaging in the same unlawful conduct that brought him here today. And that defeats the purpose of his probation. The juvenile court action. I'm sorry. So let's drill down on this. So what does it mean? It means you can't communicate? To associate, to communicate, to have a relationship. Yes. And that would, I agree, include text messaging. Because associate is a word that the judge could have put in the order. She said contact. Yes. And that complies with the statute. Yeah, okay, fine, the statute. But this order is what governs his conduct. He's walking around every day thinking, I do not want to get violated. I do not want to go into juvenile detention. I'm trying to comply. A reasonable reading of this would be that he can't even so much as say hello to someone who's in a gang, right? It's not a reasonable. It's not reasonable. That would not be a reasonable interpretation. Because we have to look at the legislative objective of the order and of the statute that's authorizing the order. Do you want us to do that too? Look at the legislative history to determine what conduct is prohibited and which is not? Again, he was represented by counsel, but this minor was very aware of exactly what he wasn't supposed to do. He knew what gang members were. He identified himself as a gang member. And it turns, when talking to a teenager, it's a lot easier for this court to say, you are not to have contact with any gang member, than to get into some sort of legal analysis or some big or different words that the minor has to engage in. Again, a legal analysis to figure out what the court is saying. The court looked right at this minor and said, no contact with gangs, guns, or drugs. And he knew exactly what the juvenile court meant when she said that. Well, after Omar F., Judge Rivers, as I'm sure you are aware, changed the order. Yes. And we have another case coming up, I'm sure you know that. Maybe you're arguing it, I don't know. And she changed it from no contact with gangs to no illegal gang activity. I mean, that's a way to modify it, right? I don't believe that actually solves the problem. Because what that order does is it makes it a violation of that minor's probation to engage in some kind of criminal conduct That's actually already, he's already prohibited from engaging in criminal conduct pursuant to his probation. So in essence, the result of Omar F.'s flawed analysis caused the court below, who was attempting to abide by Omar F., to enter an order that was somewhat redundant, and if anything, perhaps too narrow. It might have been an overcorrection, but there are ways that it could be modified, certainly. Certainly. And it can absolutely be modified to better serve the minor's interests if this juvenile court has the information and the facts that it needs to properly tailor or craft this order. So then aren't we going into a waiver or a forfeiture argument saying he never brought this up to the trial court, so therefore he kind of blew it? Yes, yes. But the Constitution demands here is the movement established on constitutionality. And here he had an obligation to raise these issues. And including this constitutional challenge, to raise it first in the trial court and to bring it to the trial court's attention and say this is unconstitutional as applied to my situation because of X, Y, and Z. But he didn't do that. And if he had, the juvenile court could have engaged in a fact-finding process and left us right now with a record where we could better determine what the minor's situation is. So before a judge imposes conditions like this, the juvenile court does look into what's going on in the minor's life, right? There is a social investigative report. Absolutely. There is a very detailed social investigation report. She had a pretty good idea already, right? Correct. I grant you it does not appear in the record that the counsel for the juvenile brought these things up, but it's not as if she made this in a vacuum and had no idea what she was doing, is it? Exactly. She was aware of the minor's familial situation, which as we see in the record there is no evidence whatsoever that anyone in the minor's family was a member of the gang. There's no evidence anyone in his school that he had a job or that anyone in his workplace was a member of a gang. And the truth of the matter is the juvenile court could ask an infinite number of questions of this minor, but the only individual who has the knowledge and who knows how this restriction might impact his own specific circumstance is the minor himself. So what I want to leave you with today is that this minor has the ability to return to juvenile court to establish any facts that make this gang restriction unconstitutional as applied to him, but until he does so, this record fails to support his as-applied constitutional challenges because we cannot expect the juvenile court to carve out exceptions to the minor's conditions of probation if this minor fails to inform the juvenile court of facts warranting such an exception. So for these reasons... Did the minor at NRAJW inform the court of the reasons for exceptions why he would want to go back into South Elgin after he was kicked out of the entire town by the judge? I'm not aware of the specific facts, what happened at the trial level in NRAJW, but that case is distinguishable from the present one because what the Illinois Supreme Court found so problematic with NRAJW is that the court's order didn't comport with the statute. The statute required... You're right, it didn't, but as your colleague on the other side mentioned, they said that the requirement of the need for exceptions also followed the constitutional requirement. Ultimately, they said there was a constitutional problem, not a statutory one, and the constitutional problem was there was no exception. He was kept out of South Elgin completely. And you're absolutely right, but we're dealing with a banishment, an order that's restricting the minor from entering an entire city where his family is, where his school is, where his primary care position is, for any reason. That is not the same as limiting a minor who's on probation from having contact with gang members when he himself is a known gang member and is likely involved in this case because of that very conduct. So if there are no other questions from this court, we would ask that for all the reasons discussed and those stated in our brief that you affirm the minor's sentencing order. Thank you, Ms. Puzo. Mr. McKenry? Just briefly, I'd like to mention, I mean, you know, the concept of banishment that was just talked about now, that's so different than the present case. It sort of flies in the face of how these communities work. I mean, as was spread of record in the social investigation, this is an area that has a high gang presence. So, you know, yes, it's not technically banishment, but the reality is this kid is going to live in a world where he has contact with gang members on a consistent basis. There's no way around that. To pretend otherwise is simply fictional. As far as then, too, you know, what arguments are being made or not, you know, whether our briefs were confusing or not, it tracked OMRF, which basically resolves the issue on non-constitutional grounds. But it certainly does address constitutional concerns as well. But as everyone knows, you know, this court should decide the case on non-constitutional grounds if it can. There is a requirement that all probationary conditions and restrictions must be reasonable. In this case, they're not reasonable, as OMRF found, because they're overly broad to the point where they don't provide sufficient notice or means by which the respondent can find valid exemptions. So there are all these reasons. That makes it unreasonable. It can be struck down on that basis alone. There's no need for this court to say, well, this is a facial challenge and, you know, this is an unconstitutional statute or probationary order. That's not what we're asking for. As far as the forfeiture goes, as Your Honor mentioned, in JW it wasn't brought up before. In OMRF it wasn't brought up before. There's strong language in OMRF as to why this is a substantial problem with the system breaking down, the judicial integrity. We would hold by that language and ask this court to do the same. Thank you very much. Thank you, Mr. McKinnon. All right. The court will take the matter under advisement and will issue an order as soon as possible. We are going to reshuffle our panel for Round 2.